UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | |
|---|---|
| **FREDDIE CANN** | **CIVIL ACTION NO. 06-2319-LC** |
| **V.** | **SECTION P** |
| **RICHARD STALDER, ET AL** | **JUDGE TRIMBLE** |
| | **MAGISTRATE JUDGE WILSON** |

## REPORT AND RECOMMENDATION

Before the court is a pro se civil rights complaint (42 U.S.C. § 1983) filed *in forma pauperis* by Freddie Cann. Plaintiff originally filed this matter on October 6, 2006, in the Middle District of Louisiana (docket number 3:06-cv-773). The case was subsequently transferred to the Western District of Louisiana, and as shown above, docketed under number 2:06-cv-2319. At the time of transfer, plaintiff was incarcerated at C. Paul Phelps Correctional Center (CPP), Dequincy, Louisiana, and in this matter he complains of events which are alleged to have occurred while he was incarcerated at that facility. However, plaintiff was subsequently transferred to David Wade Correctional Center, Homer, Louisiana. Plaintiff names the following as defendants herein: CPP Warden Robert Y. Henderson; CPP Assistant Wardens for Treatment Joseph Ruebush and Peshoff; CPP Nurses Margaret Aubin and Julia Bordelon; and Louisiana's Department of Public Safety and Corrections (LDOC) Secretary Richard Stalder.

Plaintiff's principle claim herein is that his constitutional rights have been violated as he was subjected to deliberate indifference in regard to his serious medical needs. Plaintiff also alleges the state tort claims of medical malpractice, medical negligence, medical malfeasance, abuse of process,

negligence and gross negligence, and malfeasance. As a result of the alleged actions of the defendants, plaintiff seeks the following relief: an injunction ordering defendants to arrange for appropriate diagnostic testing in order to ascertain the condition of plaintiff's shoulder; an injunction ordering that the plaintiff be immediately seen by a specialist for his shoulder, and that defendants carry out any treatment recommended by such specialist; a declaratory judgment stating that the actions of the defendants violated plaintiff's Eighth Amendment rights as well as various state laws; and unspecified compensatory and punitive damages.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court.

## STATEMENT OF THE CASE

Plaintiff claims that he injured his shoulder/rotator cuff in 2005. Although plaintiff was apparently not incarcerated when he sustained the injury, he states that he was put in prison prior to having corrective surgery on his shoulder. Specifically, plaintiff arrived at Elayn Hunt Correctional Center on January 26, 2006, and was transferred to CPP on or about March 27, 2006.

Upon his arrival at PCC, plaintiff informed the medical screening provider of his injury and of the light duty status that he was placed on at Elayn Hunt. On March 28, 2006, plaintiff was seen by Nurse Aubin for an initial medical screening, wherein he advised Aubin of his medical condition and that certain movements caused him pain. He also gave her information on the prior diagnostic tests that he had done and informed her that surgery was needed to correct his condition. Plaintiff claims that he was advised that neither his prior duty status or medication orders from Elayn Hunt would be followed at CPP as the LDOC had a policy that such orders need not be followed from one institution to another. Aubin prescribed physical therapy for plaintiff but did not provide the plaintiff

with a limited duty status.

Plaintiff claims that he was injured again on June 11, 2006, when he slipped and fell while working in the CPP kitchen. Plaintiff was sent to the CPP medical area and was prescribed Tylenol. An x-ray was also taken. Plaintiff states that he was seen by nurse Aubin a number of times "through out the events listed above," but complains that Aubin was not supervised by a physician. [Doc. 1-1, p. 8]. On August 28, 2006, plaintiff was seen by Dr. Fletcher, who prescribed Ibuprofen, Flexaril, and Benadryl to treat plaintiff's back, neck, shoulder, and head complaints. Plaintiff was also given a limited/restricted duty status at that time.

## LAW AND ANALYSIS

### I. Frivolity Review

Plaintiff has been granted leave to proceed *in forma pauperis* under 28 U.S.C. §1915. Under 28 U.S.C. §1915(e)(2)(B), a district court is directed to dismiss an action if the court determines that the action is frivolous or malicious or fails to state a claim on which relief may be granted. See, 28 U.S.C. § 1915(e)(2)(B)(I) and (ii); *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). A complaint is frivolous if it lacks an arguable basis in law or fact. *Gonzalez v Wyatt,* 157 F.3d 1016, 1019 (5th Cir. 1998) citing *Siglar v. Hightower,* 112 F.3d 191, 193 (5th Cir. 1997). A complaint fails to state a claim upon which relief may be granted if it is clear the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Doe v. Dallas Independent School District*, 153 F.3d 211, 215 (5th Cir. 1998). When determining whether a complaint is frivolous or fails to states a claim upon which relief may be granted, the court must accept plaintiff's allegations as true. *Horton v. Cockrell*, 70 F.3d 397, 400 (5th Cir. 1996) (frivolity); *Bradley,* 157 F.3d at 1025 (failure to state a claim).

3

**II. 42 U.S.C. §1983**

Section 1983 proscribes conduct by any person who, under the color of state law, acts to deprive another person of any right, privilege, or immunity secured by the Constitution and laws of the United States. 42 U.S.C. §1983. Thus, an initial inquiry in a lawsuit filed under §1983 is whether plaintiff has alleged that his constitutional rights have been violated. If no constitutional violation has been alleged, there is no cognizable claim under §1983. In order to hold the defendants liable under 42 U.S.C. §1983, the plaintiff must allege facts to show (1) that a constitutional right has been violated and (2) that the conduct complained of was committed by a person acting under color of state law, that is, that the defendant was a state actor. See *Hessbrook v. Lennon*, 777 F.2d. 999, 1005 (5th Cir. 1985).

Based upon plaintiff's pleadings, the court is convinced that plaintiff has presented the best case which could be presented by him under the circumstances, and that further amendment of the pleadings would serve no useful purpose. Accepting all of plaintiff's allegations as true, and giving plaintiff the benefit of every doubt, the court concludes, for the reasons stated hereinafter, that he has failed to state a claim for relief, that his claims are frivolous as a matter of law, and that his complaint should therefore be dismissed with prejudice.

**III. Injunctive Relief**

Plaintiff's complaint centers around his allegations regarding the conditions of confinement at CPP. However, as previously stated, plaintiff has been transferred from CPP to another prison facility. Therefore, his request for injunctive relief ,specifically ordering defendants to arrange for medical tests, evaluations, and treatment is moot. The law is clear that the transfer of a prisoner out of an allegedly offending institution generally renders his claims for injunctive relief moot. *Weinstein*

*v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975) (*per curiam*) (plaintiff's individual suit challenging parole procedures mooted by release absent "demonstrated probability" that he would again be subject to parole board's jurisdiction); *Cooper v. Sheriff, Lubbock County, Tex.*, 929 F.2d 1078, 1081 (5th Cir.1991) (*per curiam*) (holding that prisoner transferred out of offending institution could not state a claim for injunctive relief). In order for plaintiff's claims to remain viable, he would have to establish that the possibility of returning to CPP would make his claims capable of repetition yet evading review. See *Hardwick v. Brinson*, 523 F.2d 798, 800 (5th Cir.1975). Plaintiff must show either a "demonstrated probability" or a "reasonable expectation" that he would again be incarcerated at CPP. *Murphy v. Hunt*, 455 U.S. 478, 482, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982). At its most lenient, the standard is not "mathematically precise" and requires that plaintiff show a "reasonable likelihood" of repetition. *Honig v. Doe*, 484 U.S. 305, 318-19, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988). Even under the most permissive interpretation, plaintiff's complaint does not, and cannot, meet that standard. Simply put, plaintiff has been transferred from the custody of CPP and his request for injunctive relief is moot. See, *Herman v. Holiday*, 238 F.3d 660 (5th Cir.2001)(even if plaintiff had established an Eighth Amendment violation, his transfer from the offending institution rendered his claims for declaratory and injunctive relief moot) citing *Cooper v. Sheriff, Lubbock County, Tex.*, 929 F.2d 1078, 1084 (5th Cir. 1991) *Bailey v. Southerland*, 821 F.2d 277, 279 (5th Cir. 1987).

**IV.  Medical Care Claims**

Medical care claims asserted by convicted prisoners, like plaintiff, are analyzed under the Eighth Amendment's prohibition of cruel and unusual punishment. In order to prevail on such claims, convicts must establish that the refusal or delay in providing medical care was "sufficiently

5

harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Deliberate indifference in the context of the failure to provide reasonable medical care to a convicted prisoner means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that they subjectively intended that harm occur. *Thompson v. Upshur County, Texas*, 245 F.3d at 458-59. "[T]he failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001)(emphasis supplied). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459. "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999).

The fact that a plaintiff disagrees with what medical care is appropriate or with the course of treatment offered my the medical staff does not state a claim of deliberate indifference to serious medical needs. See *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997); *Callaway v. Smith County*, 991 F. Supp. 801, 809 (E.D. Tex. 1998); *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *Mayweather, supra; Varnado v. Lynaugh,* 920 F.2d 320, 321 (5th Cir. 1992) citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). In *Woodall v. Foti*, 648 F.2d. 268, 272 (5th Cir. 1981), the Fifth Circuit Court of Appeals stated that the test in balancing the needs of the prisoner versus the needs of the penal institution is one of medical necessity, not of desirability. The fact that a plaintiff does not believe that his medical treatment was as good as it should have been is not a

cognizable complaint under the Civil Rights Act. Prisoners are not constitutionally entitled to the best medical care that money can buy. *See Mayweather v. Foti,* 958 F.2d. 91 (5th Cir. 1992); *Woodall, supra.* Merely alleging a prison doctor should have undertaken additional diagnostic measures or utilized an alternative method of treatment does not elevate a claim to constitutional dimension. *Varnado*, 920 F.2d at 321. See, *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985)(A disagreement with a doctor over the method and result of medical treatment does not require a finding of deliberate indifference). Furthermore, the fact that plaintiff continues to suffer from pain is insufficient to establish that a constitutional violation has occurred. *Mayweather, supra.*

In the instant case, the information contained in plaintiff's complaint indicates that plaintiff received medical treatment, including various examinations and prescriptions for medications and physical therapy. Further, the first step grievance response provided by plaintiff details, at length, plaintiff's medical history as follows:

> According to your medical records, you arrived here on 3/27/06 and were seen by the Nurse Practitioner on 3/28/06. . . . the nurse continued you medications of Benadryl for sinus, Tylenol for shoulder and neck pain and flexeril for muscle pain. She added Bactroban . . . for the cyst on your jaw . . . shoulder exercises for 4 weeks and a no sports duty status . . . you signed a refusal for your no sports status. You were seen on 4/13/06 for a recheck . . . and on 5/12/06 for a recheck. On 5/23/06, you were seen by Dr. Williams . . . he added Bactrim DS . . . . On 6/5/06, you were seen by the Nurse Practitioner . . . she ordered Tylenol for 7 days, Bactrim DS and antibiotic ointment . . . . On 6/11/06 you fell in the kitchen . . . were examined and referred to the Nurse Practitioner in the AM. You were seen on 6/12/06 by the NP, referred for s-rays and placed on a duty status with no lifting over 10 pounds, no walking over 1 mile, a bottom bunk, no moving machinery, no high places, no contact sports or weight lifting and duty on the compound. X-rays . . . showed degenerative arthritis of the C spine and degenerative spurring at the head of the humerus. You made a sick call on 6/13/06 and were seen the following day by the NP who referred you to Dr. Williams. On 6/16/06 after being seen by Dr. Williams, he ordered . . . x-rays. You were sent to Moss Regional Hospital for the x-rays receiving a diagnosis of musculoskeletal pain. For this you were ordered Flexeril and Tylenol. You were then seen on 6/22/06 . . . . You were ordered lab work and Benadryl. The lab work

>done on 6/29/06 . . . was within normal limits. Your sick call of 7/7/06 was treated with 4 medications . . . . 8/1/06 you complained . . . and were seen by the Nurse Practitioner and ordered analgesic balm for the store. Your were seen by Dr. Fletcher on 8/30/06 . . . . You were given a duty status of dorm restriction with dorm duty, one armed duty, no lifting over 5 pounds, no bending, squatting, or goosepicking, bottom bunk, mo moving machinery, no high places as ladders or roof tops, no sports, no weight lifting until 9/15/06. You were given Flexeril, Ibuprofen and have been ordered further tests. As for the rash, the Antifungal cream you were using was resolving th problem. [Doc.4, pp.13 & 14]

Plaintiff's allegations, at most, state a disagreement amongst himself and the medical staff regarding the procedures to treat his medical problems. As previously stated, such claims are insufficient to establish that a constitutional violation has occurred, and based upon all allegations of plaintiff, the undersigned concludes that the defendants did not act with deliberate indifference to plaintiff's serious medical needs. Accordingly, this court finds that plaintiff's claims for inadequate medical care should be dismissed for failing to state a claim pursuant to 28 U.S.C. § 1915A(b)(1).

**V. Claims Arising Under Louisiana Law**

Finally, plaintiff has raised supplemental state law claims under Louisiana law. A federal district court has supplemental jurisdiction over all other claims that are so related to claims in the action within its original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C. § 1367(a). The court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3).

Because dismissal is recommended for all of plaintiff's federal civil rights claims, it is appropriate that the court decline to exercise supplemental jurisdiction over these remaining state law claims and dismissal of those claims is recommended. See *Bass v. Parkwood Hosp.*, 180 F.3d 234, 246 (5th Cir.1999); *Welch v. Thompson*, 20 F.3d 636, 644 (5th Cir.1994).

 Accordingly,

**IT IS RECOMMENDED** that plaintiff's claims seeking injunctive relief be **DENIED** and **DISMISSED** as moot;

**IT IS ALSO RECOMMENDED** that plaintiff's civil rights claims be **DENIED AND DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim upon which relief can be granted in accordance with 28 U.S.C.1915A(b)(1).

**IT IS FURTHER RECOMMENDED** that the plaintiff's Supplemental State Court claims be **DISMISSED WITHOUT PREJUDICE** to plaintiff's right to re-file these claims in the appropriate state court.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglas v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, June 4, 2007.

ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE

9